# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No. _____

Robert and Lisa Denault, as Personal Representatives
of the Estate of Duane A. Converse,

       Plaintiffs,

v.

DHLInternational - Bahrain, DHL International B.S.C.(c),
DHL International Qatar, Ltd., DHL Qatar, Ltd.,
DHL Worldwide Express, GMBH, DHL International,
GMBH, DHL International, E.C., DHL Aviation
EEMEA B.S.C.(c) , Deutsche Post DHL, DHL
International - Iraq, DHL International Express,
DHL Global Mail, DHL Holdings (USA)
Incorporated, DHL Express (Iraq), Inc., DHL Express
(Bahrain), Inc., DHL Aviation (USA), DHL Aviation
(Iraq), DHL Aviation, Mr. Zhou (first name unknown),
and Mr. Carvalho (first name unknown),

       Defendants.

_____/

## PLAINTIFFS' COMPLAINT AND JURY DEMAND

Plaintiffs, Robert and Lisa Denault, as Personal Representatives of the Estate of Duane A.

Converse, by and through their undersigned counsel, seek damages for the wrongful death of

Duane A. Converse as hereinafter set forth.

## THE PARTIES

1.      Plaintiffs, Robert and Lisa Denault, are the Personal Representatives of the Estate of Duane A. Converse [hereinafter "Decedent"], and bring this action in their representative capacity on behalf of the decedent's Estate and all survivors under Florida's Wrongful Death Act.  The survivors are Justin Robert Converse and Christopher Jacob Converse, both minor sons of Decedent.   Plaintiffs are considered citizens of the State of California, the residence of Decedent at the time of his death.

2.      Defendant DHL International – Bahrain ("DHL Bahrain") is a foreign company with its principal place of business in Bahrain.

3.      Defendant DHL International – B.S.C.(c) ("DHL B.S.C.") is a foreign company with its principal place of business in Bahrain.

4.      Defendant DHL International – Qatar, Ltd. ("DHL Int'l Qatar") is a foreign company with its principal place of business in Qatar.

5.      Defendant DHL Qatar, LTD ("DHL Qatar") is a foreign company with its principal place of business in Qatar.

6.      Defendant DHL Express Worldwide, GMBH ("DHL Worldwide") is a foreign company with its principal place of business in Germany.

7.      Defendant DHL International, GMBH ("DHL Int'l") is a foreign company with its principal place of business in Germany.

8.      Defendant DHL International, E.C. ("DHL") is a foreign company with its principal place of business in Bahrain.

9.      Defendant DHL Aviation EEMEA B.S.C.(c) ("DHL Aviation EEMEA") is a foreign company with its principal place of business in Bahrain.

10.     Defendant Deutsche Post DHL ("Deutsche Post") is a foreign company with its principal place of business in Germany.

11.     Defendant DHL International – Iraq ("DHL Iraq") is a foreign company with its principal place of business in Iraq.

12.     Defendant DHL International Express ("DHL Int'l Express") is a foreign company with its principal place of business in Iraq.

13.     Defendant DHL Global Mail ("DHL Global Mail") is a foreign company with its principal place of business in Singapore.

14.     Defendant DHL Holdings (USA) Incorporated ("DHL Holdings") is incorporated in Delaware and Ohio and maintains its principal place of business in Broward County, Florida.

15.     Defendant DHL Express (Iraq), Inc. ("DHL Express Iraq") is a foreign company with its principal place of business in Iraq.

16.     Defendant DHL Express (Bahrain), Inc. ("DHL Express Bahrain") is a foreign company with its principal place of business in Bahrain.

17.     Defendant DHL Aviation (USA) ("DHL Aviation USA") is incorporated in the states of Delaware and Ohio and maintains its principal place of business in Broward County, Florida.

18.     Defendant DHL Aviation (Iraq) ("DHL Aviation Iraq") is a foreign company with its principal place of business in Iraq.

19.     Defendant DHL Aviation ("DHL Aviation") is a foreign company with its principal place of business in the United Kingdom.

20.     Defendant Mr. Zhou ("Zhou") has been identified in U.S. government reports and disclosures from DHL Express and DHL Global as the driver of the forklift that killed Duane

Converse.  The reports are redacted, and the plaintiffs have not yet been able to determine Mr. Zhou's first name or where he resides.  He was an employee or agent of one or more defendants on March 11, 2009.  The defendants are in possession of information that identifies the forklift driver and his location of residence.  The plaintiffs will seek this information in discovery and will amend this Complaint as necessary once that information becomes known.

21.     Defendant Mr. Carvalho ("Carvalho") has also been identified in U.S. government reports and disclosures from DHL Express and DHL Global as the driver of the forklift that killed Duane Converse.  The reports are redacted, and the plaintiffs have not yet been able to determine Mr. Carvalho's first name or where he resides.  He was an employee or agent of one or more defendants on March 11, 2009.  The defendants are in possession of information that identifies the forklift driver and his location of residence.  The plaintiffs will seek this information in discovery and will amend this Complaint as necessary once that information becomes known.

### JURISDICTION AND VENUE

22.     This Court has personal jurisdiction over defendants DHL Holdings and DHL Aviation USA, as they maintain their principal places of business in Florida.

23.     This Court has personal jurisdiction over the remaining defendants because, based on information and belief, they are closely affiliated with, employed by, or owned by the Florida-based defendants and engage in substantial activities within Florida and this district, and they engage in substantial and not isolated contacts within this district.

24.     This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(a), as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states and citizens of foreign states.

25.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 (a), as a substantial part of the events or omissions giving rise to the claim occurred in this district, and the defendants are subject to personal jurisdiction at the time the action is commenced.

### GENERAL ALLEGATIONS COMMON TO ALL COUNTS

26.     DHL is a worldwide company that provides shipping, cargo and logistics services throughout the world.  DHL consists of a multitude of divisions, companies, subsidiaries and affiliates, all of which comprise the global DHL network and work together to further DHL's company objectives.

27.     Through its various divisions and affiliated companies (defendants herein), DHL provides mail, shipping and cargo services to support U.S. Military operations in Iraq, and particularly at the Al Asad Air Base.

28.     On March 11, 2009, Decedent Duane Converse, age 39, was working as a civilian employee of Kellogg, Brown and Root ("KBR") Airfield Operations at Al Asad Air Base ("AAAB") in Iraq.  He was kneeling down painting traffic lines in the vicinity of a parked cargo plane located on Foxtrot Ramp, AAAB, Iraq.  While doing so, he was struck and killed by a Hyundai HDF-70-7A forklift truck, VIN # FQ0210523, leased by one or more defendants from Qatar International Trading, Baghdad, and driven by an employee and agent of one or more defendants.

29.     The forklift driver was a civilian employed by one or more defendants at AAAB, Iraq, whose work responsibilities included supporting DHL's commercial shipping services and maintaining cargo manifest documentation for DHL's operations aboard AAAB, Iraq.

30.     The DHL defendants have executed contracts (MOA Between DHL and 3DMAW (Forward) ALD/21Feb08 and Contract W91GEU-07-A-001/04Oct06, among possible others,

with the United States military, Department of Defense, regarding operations at AAAB, Iraq encompassing all time periods relevant to this action, and are the sole providers for transferring United States Postal Service Mail in and out of Iraq.

31.     One or more of the DHL defendants own, operate, maintain or manage the major hub for all military mail for forces deployed in the United States Central Command (CENTCOM) area of responsibility (AOR), which includes the Country of Iraq.

32.     DHL was awarded a contract with the United States Department of Defense ("DOD") to provide "Worldwide International Commercial Express Service" for the door to door pickup/delivery, carrier provided transportation, in-transit visibility, powertrack participation, and customs clearances of small packages weighing 0-150 pounds.  The contract covers times relevant to this lawsuit.  This contract was negotiated and/or executed in Florida by one or more of the defendants.

33.     At all times relevant to this lawsuit, one or more defendants provided cargo, mail and shipping services at the AAAB, when the subject incident occurred.  Various operational decisions relevant to DHL operations in Iraq were made either in Florida or by the Florida-based defendants.

34.     One or more defendants provided the forklift driver with forklift training and certification through its Air Operations Manger in Iraq.

35.     Shortly after the incident, emergency medical personnel from Remote Medical Solutions International arrived on scene at 1349 hours and observed injuries incompatible with life, to include exposed brain matter.

36.     An autopsy was performed on March 14, 2009 at Dover Port Mortuary, Dover, Delaware, and the April 4, 2009 autopsy report listed the cause of death as "blunt force injuries

of the head and chest", with the manner of death as "accident".  The autopsy reflected that "the head and chest sustained fatal injuries resulting in instantaneous death".

37.     The results of the Report of Toxicological Examination reflected that no drugs were found in Decedent's system, and witness reports and the Judge Advocate General final report of investigation concerning the death of Mr. Duane Converse  [hereinafter "JAG Report"] noted no signs of alcohol in his system.

38.     The Multi-National Force-West, AAAB, Iraq declined prosecution under the Military Extraterritorial Jurisdiction Act or the Uniform Code of Military Justice against the driver of the DHL forklift, a decision with which the Staff Judge Advocate concurred.  Multi-National Corps – Iraq has reserved jurisdiction over civilian contractor misconduct within the Iraq Theater of Operations, and determined that criminal charges were not warranted.  The NCIS Contingency Response Field Office ("CRFO"), Glynco, Georgia administratively reviewed the investigation and recommended it be closed.  On June 30, 2009, the NCIS CRFO conducted a Death Review Panel, which authorized closure of the investigation.

39.     Occupational Safety & Health Administration ("OSHA") Standard 1910.178 (Powered Industrial Trucks) and the AAAB Operations Manual applicable to the Joint Air Cargo Operations Terminal at AAAB, Iraq provide for 5 mile per hour speed limits in the vicinity of air craft and a maximum of 25 miles per hour in other areas and states:  ". . . if the load being carried obstructs forward view, the driver shall be required to travel with the load trailing".  OSHA regulations require the driver to look in the direction of, and keep a clear view of the path of travel.  Witnesses estimate that the forklift driver was traveling at least double that speed and did not keep a clear view of the path of travel.

40.   DHL requires all fork truck operators to complete a two day course of instruction on the Gradall 534D9-45, Rough Terrain Telescopic Handler.  During the instruction course the recommendation for drivers to drive the vehicle in reverse when a load obstructs their regular view forward is made.  The driver is given the discretion to operate their vehicle in the safest manner given the situation.

41.   The forklift driver received a DHL Certificate of Basic Training certifying his attendance at the two-day course of basic training located at Al Asad, Iraq on March 29 – 30, 2008.

42.   The forklift driver received a DHL Lift Truck Operator Certificate of Basic Training certifying his attendance at the one-day course of basic training located at Al Asad, Iraq on March 30, 2008.

43.   The DHL office aboard AAAB, Iraq provided the Naval Criminal Investigative Service investigators a copy of the Al Asad Airfield Driver's License for the forklift driver, which he received two days before the incident that killed Decedent and had an expiration date of March 9, 2010.

44.   Witness statements described that the loaded DHL forklift that killed Duane Converse had the cargo pallet high and in front of it and was driving fast on the flight line at a 45-degree angle toward the DHL aircraft it was to load when it ran over Decedent.

45.   Despite diligent efforts, the plaintiffs have not yet been able to specifically determine which DHL entities were responsible for the specific operations at Al Asad Air Base, and how various responsibilities were managed and coordinated among and between the DHL entities.  Reports obtained from the U.S. Military have been redacted, preventing the plaintiffs from discovering certain key information.  The plaintiffs are continuing in their efforts to obtain

all necessary information, and have based the allegations in this Complaint on all information currently known and available to the plaintiffs.

## COUNT 1
## NEGLIGENCE OF DHL INTERNATIONAL - BAHRAIN

46.     Plaintiffs hereby incorporate by reference all statements and allegations contained in paragraphs 1 through 45 above as if fully set forth herein.

47.     At all relevant times, DHL Bahrain had a duty to exercise reasonable care to safely execute its operations on AAAB, Iraq and to take reasonable steps to prevent injury to civilian contractors and others who were working at the air base.

48.     DHL Bahrain breached its duty and was negligent in the following respects:

        a.      Failing to properly train its agents and employees, including the forklift driver, in the safe operation of the forklift;

        b.      Failing to set up, install or provide adequate barriers or other safety devices on the ramp to protect Decedent and others from getting run over by a forklift;

        c.      Failing to take reasonable steps to ensure that the forklift driver was competent to operate the forklift;

        d.      Failing to adequately instruct the forklift driver regarding the safe and proper operation of the forklift;

        e.      Failing to create and enforce adequate policies to prevent improper loading and operation of the forklift;

        f.      Failing to adequately supervise the forklift driver in the operation of the forklift.

49.     At the time of the incident described above, the forklift driver was an employee or agent of DHL Bahrain, acting within the course and scope of his employment.

50.     DHL Bahrain leased the forklift and was responsible for its maintenance and operation.

51.     The forklift driver drove the forklift loaded with a cargo pallet that impeded his ability to view his direction and path of travel while operating on Foxtrot Ramp, which resulted in him running over and killing Duane Converse.

52.     The forklift driver owed a duty to Decedent and others to operate the forklift in a reasonably safe manner and to take reasonable steps to avoid running over pedestrians.

53.     The forklift driver breached this duty and was negligent in one or more of the following ways:

        a.     Failing to keep a proper lookout;

        b.     Driving too fast for the conditions;

        c.     Driving with an obstructed view;

        d.     Failing to see and avoid contact with Decedent.

54.      The forklift driver was required to adhere to OSHA regulations to include traveling with the load trailing when the load obstructs forward view, and he violated this requirement.  This also violated DHL's own policies and other policies in effect at the base.

55.     The forklift driver was driving faster than the accepted speed limit for operation near aircraft, which contributed to this incident and to Decedent's death.

56.     DHL Bahrain is vicariously liable for the negligence of its agents and employees.

57.     As a direct and proximate result of the negligence of DHL Bahrain and its agents and employees as set forth above, Decedent died, causing his estate to suffer loss of prospective

net accumulations and medical and funeral expenses, and his surviving minor sons to suffer future loss of support and services, lost parental companionship, instruction and guidance, and mental pain and suffering.

WHEREFORE, the plaintiffs demand judgment against defendant DHL Bahrain for the damages claimed herein and any other damages allowed by law.

### COUNT 2
### NEGLIGENCE OF DHL INTERNATIONAL – B.S.C.(c)

58.    Plaintiffs hereby incorporate by reference all statements and allegations contained in paragraphs 1 through 45 above as if fully set forth herein.

59.    At all relevant times, DHL B.S.C. had a duty to exercise reasonable care to safely execute its operations on AAAB, Iraq and to take reasonable steps to prevent injury to civilian contractors and others who were working at the air base.

60.    DHL B.S.C. breached its duty and was negligent in the following respects:

a.    Failing to properly train its agents and employees, including the forklift driver, in the safe operation of the forklift;

b.    Failing to set up, install or provide adequate barriers or other safety devices on the ramp to protect Decedent and others from getting run over by a forklift;

c.    Failing to take reasonable steps to ensure that the forklift driver was competent to operate the forklift;

d.    Failing to adequately instruct the forklift driver regarding the safe and proper operation of the forklift;

e.    Failing to create and enforce adequate policies to prevent improper loading and operation of the forklift;

f.      Failing to adequately supervise the forklift driver in the operation of the forklift.

61.     At the time of the incident described above, the forklift driver was an employee or agent of DHL B.S.C., acting within the course and scope of his employment.

62.     DHL B.S.C. leased the forklift and was responsible for its maintenance and operation.

63.     The forklift driver drove the forklift loaded with a cargo pallet that impeded his ability to view his direction and path of travel while operating on Foxtrot Ramp, which resulted in him running over and killing Duane Converse.

64.     The forklift driver owed a duty to Decedent and others to operate the forklift in a reasonably safe manner and to take reasonable steps to avoid running over pedestrians.

65.     The forklift driver breached this duty and was negligent in one or more of the following ways:

a.      Failing to keep a proper lookout;

b.      Driving too fast for the conditions;

c.      Driving with an obstructed view;

d.      Failing to see and avoid contact with Decedent.

66.      The forklift driver was required to adhere to OSHA regulations to include traveling with the load trailing when the load obstructs forward view, and he violated this requirement.  This also violated DHL's own policies and other policies in effect at the base.

67.     The forklift driver was driving faster than the accepted speed limit for operation near aircraft, which contributed to this incident and to Decedent's death.

68.     DHL B.S.C. is vicariously liable for the negligence of its agents and employees.

69.     As a direct and proximate result of the negligence of DHL B.S.C. and its agents and employees as set forth above, Decedent died, causing his estate to suffer loss of prospective net accumulations and medical and funeral expenses, and his surviving minor sons to suffer future loss of support and services, lost parental companionship, instruction and guidance, and mental pain and suffering.

WHEREFORE, the plaintiffs demand judgment against defendant DHL B.S.C. for the damages claimed herein and any other damages allowed by law.

## COUNT 3
## NEGLIGENCE OF DHL INTERNATIONAL – QATAR, LTD.

70.     Plaintiffs hereby incorporate by reference all statements and allegations contained in paragraphs 1 through 45 above as if fully set forth herein.

71.     At all relevant times, DHL Int'l Qatar had a duty to exercise reasonable care to safely execute its operations on AAAB, Iraq and to take reasonable steps to prevent injury to civilian contractors and others who were working at the air base.

72.     DHL Int'l Qatar breached its duty and was negligent in the following respects:

    a.     Failing to properly train its agents and employees, including the forklift driver, in the safe operation of the forklift;

    b.     Failing to set up, install or provide adequate barriers or other safety devices on the ramp to protect Decedent and others from getting run over by a forklift;

    c.     Failing to take reasonable steps to ensure that the forklift driver was competent to operate the forklift;

    d.     Failing to adequately instruct the forklift driver regarding the safe and proper operation of the forklift;

e.     Failing to create and enforce adequate policies to prevent improper loading and operation of the forklift;

f.     Failing to adequately supervise the forklift driver in the operation of the forklift.

73.     At the time of the incident described above, the forklift driver was an employee or agent of DHL Int'l Qatar, acting within the course and scope of his employment.

74.     DHL Int'l Qatar leased the forklift and was responsible for its maintenance and operation.

75.     The forklift driver drove the forklift loaded with a cargo pallet that impeded his ability to view his direction and path of travel while operating on Foxtrot Ramp, which resulted in him running over and killing Duane Converse.

76.     The forklift driver owed a duty to Decedent and others to operate the forklift in a reasonably safe manner and to take reasonable steps to avoid running over pedestrians.

77.     The forklift driver breached this duty and was negligent in one or more of the following ways:

a.     Failing to keep a proper lookout;

b.     Driving too fast for the conditions;

c.     Driving with an obstructed view;

d.     Failing to see and avoid contact with Decedent.

78.     The forklift driver was required to adhere to OSHA regulations to include traveling with the load trailing when the load obstructs forward view, and he violated this requirement.  This also violated DHL's own policies and other policies in effect at the base.

79. The forklift driver was driving faster than the accepted speed limit for operation near aircraft, which contributed to this incident and to Decedent's death.

80. DHL Int'l Qatar is vicariously liable for the negligence of its agents and employees.

81. As a direct and proximate result of the negligence of DHL Int'l Qatar and its agents and employees as set forth above, Decedent died, causing his estate to suffer loss of prospective net accumulations and medical and funeral expenses, and his surviving minor sons to suffer future loss of support and services, lost parental companionship, instruction and guidance, and mental pain and suffering.

WHEREFORE, the plaintiffs demand judgment against defendant DHL Int'l Qatar for the damages claimed herein and any other damages allowed by law.

## COUNT 4
## NEGLIGENCE OF DHL QATAR, LTD.

82. Plaintiffs hereby incorporate by reference all statements and allegations contained in paragraphs 1 through 45 above as if fully set forth herein.

83. At all relevant times, DHL Qatar had a duty to exercise reasonable care to safely execute its operations on AAAB, Iraq and to take reasonable steps to prevent injury to civilian contractors and others who were working at the air base.

84. DHL Qatar breached its duty and was negligent in the following respects:

a. Failing to properly train its agents and employees, including the forklift driver, in the safe operation of the forklift;

b. Failing to set up, install or provide adequate barriers or other safety devices on the ramp to protect Decedent and others from getting run over by a forklift;

c.      Failing to take reasonable steps to ensure that the forklift driver was competent to operate the forklift;

d.      Failing to adequately instruct the forklift driver regarding the safe and proper operation of the forklift;

e.      Failing to create and enforce adequate policies to prevent improper loading and operation of the forklift;

f.      Failing to adequately supervise the forklift driver in the operation of the forklift.

85.      At the time of the incident described above, the forklift driver was an employee or agent of DHL Qatar, acting within the course and scope of his employment.

86.      DHL Qatar leased the forklift and was responsible for its maintenance and operation.

87.      The forklift driver drove the forklift loaded with a cargo pallet that impeded his ability to view his direction and path of travel while operating on Foxtrot Ramp, which resulted in him running over and killing Duane Converse.

88.      The forklift driver owed a duty to Decedent and others to operate the forklift in a reasonably safe manner and to take reasonable steps to avoid running over pedestrians.

89.      The forklift driver breached this duty and was negligent in one or more of the following ways:

a.      Failing to keep a proper lookout;

b.      Driving too fast for the conditions;

c.      Driving with an obstructed view;

d.      Failing to see and avoid contact with Decedent.

16

90.     The forklift driver was required to adhere to OSHA regulations to include traveling with the load trailing when the load obstructs forward view, and he violated this requirement.  This also violated DHL's own policies and other policies in effect at the base.

91.     The forklift driver was driving faster than the accepted speed limit for operation near aircraft, which contributed to this incident and to Decedent's death.

92.     DHL Qatar is vicariously liable for the negligence of its agents and employees.

93.     As a direct and proximate result of the negligence of DHL Qatar and its agents and employees as set forth above, Decedent died, causing his estate to suffer loss of prospective net accumulations and medical and funeral expenses, and his surviving minor sons to suffer future loss of support and services, lost parental companionship, instruction and guidance, and mental pain and suffering.

WHEREFORE, the plaintiffs demand judgment against defendant DHL Qatar for the damages claimed herein and any other damages allowed by law.

## COUNT 5
## NEGLIGENCE OF DHL EXPRESS WORLDWIDE, GMBH

94.     Plaintiffs hereby incorporate by reference all statements and allegations contained in paragraphs 1 through 45 above as if fully set forth herein.

95.     At all relevant times, DHL Worldwide had a duty to exercise reasonable care to safely execute its operations on AAAB, Iraq and to take reasonable steps to prevent injury to civilian contractors and others who were working at the air base.

96.     DHL Worldwide breached its duty and was negligent in the following respects:

a.      Failing to properly train its agents and employees, including the forklift driver, in the safe operation of the forklift;

   b. Failing to set up, install or provide adequate barriers or other safety devices on the ramp to protect Decedent and others from getting run over by a forklift;

   c. Failing to take reasonable steps to ensure that the forklift driver was competent to operate the forklift;

   d. Failing to adequately instruct the forklift driver regarding the safe and proper operation of the forklift;

   e. Failing to create and enforce adequate policies to prevent improper loading and operation of the forklift;

   f. Failing to adequately supervise the forklift driver in the operation of the forklift.

97. At the time of the incident described above, the forklift driver was an employee or agent of DHL Worldwide, acting within the course and scope of his employment.

98. DHL Worldwide leased the forklift and was responsible for its maintenance and operation.

99. The forklift driver drove the forklift loaded with a cargo pallet that impeded his ability to view his direction and path of travel while operating on Foxtrot Ramp, which resulted in him running over and killing Duane Converse.

100. The forklift driver owed a duty to Decedent and others to operate the forklift in a reasonably safe manner and to take reasonable steps to avoid running over pedestrians.

101. The forklift driver breached this duty and was negligent in one or more of the following ways:

   a. Failing to keep a proper lookout;

   b. Driving too fast for the conditions;

  c.  Driving with an obstructed view;

  d.  Failing to see and avoid contact with Decedent.

102. The forklift driver was required to adhere to OSHA regulations to include traveling with the load trailing when the load obstructs forward view, and he violated this requirement. This also violated DHL's own policies and other policies in effect at the base.

103. The forklift driver was driving faster than the accepted speed limit for operation near aircraft, which contributed to this incident and to Decedent's death.

104. DHL Worldwide is vicariously liable for the negligence of its agents and employees.

105. As a direct and proximate result of the negligence of DHL Worldwide and its agents and employees as set forth above, Decedent died, causing his estate to suffer loss of prospective net accumulations and medical and funeral expenses, and his surviving minor sons to suffer future loss of support and services, lost parental companionship, instruction and guidance, and mental pain and suffering.

WHEREFORE, the plaintiffs demand judgment against defendant DHL Worldwide for the damages claimed herein and any other damages allowed by law.

## COUNT 6
## NEGLIGENCE OF DHL INTERNATIONAL - GMBH

106. Plaintiffs hereby incorporate by reference all statements and allegations contained in paragraphs 1 through 45 above as if fully set forth herein.

107. At all relevant times, DHL Int'l had a duty to exercise reasonable care to safely execute its operations on AAAB, Iraq and to take reasonable steps to prevent injury to civilian contractors and others who were working at the air base.

108.     DHL Int'l breached its duty and was negligent in the following respects:

a.     Failing to properly train its agents and employees, including the forklift driver, in the safe operation of the forklift;

b.     Failing to set up, install or provide adequate barriers or other safety devices on the ramp to protect Decedent and others from getting run over by a forklift;

c.     Failing to take reasonable steps to ensure that the forklift driver was competent to operate the forklift;

d.     Failing to adequately instruct the forklift driver regarding the safe and proper operation of the forklift;

e.     Failing to create and enforce adequate policies to prevent improper loading and operation of the forklift;

f.     Failing to adequately supervise the forklift driver in the operation of the forklift.

109.     At the time of the incident described above, the forklift driver was an employee or agent of DHL Int'l, acting within the course and scope of his employment.

110.     DHL Int'l leased the forklift and was responsible for its maintenance and operation.

111.     The forklift driver drove the forklift loaded with a cargo pallet that impeded his ability to view his direction and path of travel while operating on Foxtrot Ramp, which resulted in him running over and killing Duane Converse.

112.     The forklift driver owed a duty to Decedent and others to operate the forklift in a reasonably safe manner and to take reasonable steps to avoid running over pedestrians.

113.    The forklift driver breached this duty and was negligent in one or more of the following ways:

      a.     Failing to keep a proper lookout;

      b.     Driving too fast for the conditions;

      c.     Driving with an obstructed view;

      d.     Failing to see and avoid contact with Decedent.

114.    The forklift driver was required to adhere to OSHA regulations to include traveling with the load trailing when the load obstructs forward view, and he violated this requirement.  This also violated DHL's own policies and other policies in effect at the base.

115.    The forklift driver was driving faster than the accepted speed limit for operation near aircraft, which contributed to this incident and to Decedent's death.

116.    DHL Int'l is vicariously liable for the negligence of its agents and employees.

117.    As a direct and proximate result of the negligence of DHL Int'l and its agents and employees as set forth above, Decedent died, causing his estate to suffer loss of prospective net accumulations and medical and funeral expenses, and his surviving minor sons to suffer future loss of support and services, lost parental companionship, instruction and guidance, and mental pain and suffering.

WHEREFORE, the plaintiffs demand judgment against defendant DHL Int'l for the damages claimed herein and any other damages allowed by law.

## COUNT 7
## NEGLIGENCE OF DHL INTERNATIONAL, E.C.

118.    Plaintiffs hereby incorporate by reference all statements and allegations contained in paragraphs 1 through 45 above as if fully set forth herein.

119.   At all relevant times, DHL had a duty to exercise reasonable care to safely execute its operations on AAAB, Iraq and to take reasonable steps to prevent injury to civilian contractors and others who were working at the air base.

120.   DHL breached its duty and was negligent in the following respects:

a.     Failing to properly train its agents and employees, including the forklift driver, in the safe operation of the forklift;

b.     Failing to set up, install or provide adequate barriers or other safety devices on the ramp to protect Decedent and others from getting run over by a forklift;

c.     Failing to take reasonable steps to ensure that the forklift driver was competent to operate the forklift;

d.     Failing to adequately instruct the forklift driver regarding the safe and proper operation of the forklift;

e.     Failing to create and enforce adequate policies to prevent improper loading and operation of the forklift;

f.     Failing to adequately supervise the forklift driver in the operation of the forklift.

121.   At the time of the incident described above, the forklift driver was an employee or agent of DHL, acting within the course and scope of his employment.

122.   DHL leased the forklift and was responsible for its maintenance and operation.

123.   The forklift driver drove the forklift loaded with a cargo pallet that impeded his ability to view his direction and path of travel while operating on Foxtrot Ramp, which resulted in him running over and killing Duane Converse.

124.     The forklift driver owed a duty to Decedent and others to operate the forklift in a reasonably safe manner and to take reasonable steps to avoid running over pedestrians.

125.     The forklift driver breached this duty and was negligent in one or more of the following ways:

      a.     Failing to keep a proper lookout;

      b.     Driving too fast for the conditions;

      c.     Driving with an obstructed view;

      d.     Failing to see and avoid contact with Decedent.

126.     The forklift driver was required to adhere to OSHA regulations to include traveling with the load trailing when the load obstructs forward view, and he violated this requirement.  This also violated DHL's own policies and other policies in effect at the base.

127.     The forklift driver was driving faster than the accepted speed limit for operation near aircraft, which contributed to this incident and to Decedent's death.

128.     DHL is vicariously liable for the negligence of its agents and employees.

129.     As a direct and proximate result of the negligence of DHL and its agents and employees as set forth above, Decedent died, causing his estate to suffer loss of prospective net accumulations and medical and funeral expenses, and his surviving minor sons to suffer future loss of support and services, lost parental companionship, instruction and guidance, and mental pain and suffering.

WHEREFORE, the plaintiffs demand judgment against defendant DHL for the damages claimed herein and any other damages allowed by law.

## COUNT 8
## NEGLIGENCE OF DHL AVIATION EEMEA, B.S.C.(c)

130.   Plaintiffs hereby incorporate by reference all statements and allegations contained in paragraphs 1 through 45 above as if fully set forth herein.

131.   At all relevant times, DHL Aviation EEMEA had a duty to exercise reasonable care to safely execute its operations on AAAB, Iraq and to take reasonable steps to prevent injury to civilian contractors and others who were working at the air base.

132.   DHL Aviation EEMEA breached its duty and was negligent in the following respects:

a.   Failing to properly train its agents and employees, including the forklift driver, in the safe operation of the forklift;

b.   Failing to set up, install or provide adequate barriers or other safety devices on the ramp to protect Decedent and others from getting run over by a forklift;

c.   Failing to take reasonable steps to ensure that the forklift driver was competent to operate the forklift;

d.   Failing to adequately instruct the forklift driver regarding the safe and proper operation of the forklift;

e.   Failing to create and enforce adequate policies to prevent improper loading and operation of the forklift;

f.   Failing to adequately supervise the forklift driver in the operation of the forklift.

133.   At the time of the incident described above, the forklift driver was an employee or agent of DHL Aviation EEMEA, acting within the course and scope of his employment.

134.   DHL Aviation EEMEA leased the forklift and was responsible for its maintenance and operation.

135.    The forklift driver drove the forklift loaded with a cargo pallet that impeded his ability to view his direction and path of travel while operating on Foxtrot Ramp, which resulted in him running over and killing Duane Converse.

136.    The forklift driver owed a duty to Decedent and others to operate the forklift in a reasonably safe manner and to take reasonable steps to avoid running over pedestrians.

137.    The forklift driver breached this duty and was negligent in one or more of the following ways:

      a.    Failing to keep a proper lookout;

      b.    Driving too fast for the conditions;

      c.    Driving with an obstructed view;

      d.    Failing to see and avoid contact with Decedent.

138.     The forklift driver was required to adhere to OSHA regulations to include traveling with the load trailing when the load obstructs forward view, and he violated this requirement.  This also violated DHL's own policies and other policies in effect at the base.

139.    The forklift driver was driving faster than the accepted speed limit for operation near aircraft, which contributed to this incident and to Decedent's death.

140.    DHL Aviation EEMEA is vicariously liable for the negligence of its agents and employees.

141.    As a direct and proximate result of the negligence of DHL Aviation EEMEA and its agents and employees as set forth above, Decedent died, causing his estate to suffer loss of prospective net accumulations and medical and funeral expenses, and his surviving minor sons to suffer future loss of support and services, lost parental companionship, instruction and guidance, and mental pain and suffering.

WHEREFORE, the plaintiffs demand judgment against defendant DHL Aviation EEMEA for the damages claimed herein and any other damages allowed by law.

## COUNT 9
## NEGLIGENCE OF DEUTSCHE POST DHL

142.    Plaintiffs hereby incorporate by reference all statements and allegations contained in paragraphs 1 through 45 above as if fully set forth herein.

143.    At all relevant times, Deutsche Post had a duty to exercise reasonable care to safely execute its operations on AAAB, Iraq and to take reasonable steps to prevent injury to civilian contractors and others who were working at the air base.

144.    Deutsche Post breached its duty and was negligent in the following respects:

a.    Failing to properly train its agents and employees, including the forklift driver, in the safe operation of the forklift;

b.    Failing to set up, install or provide adequate barriers or other safety devices on the ramp to protect Decedent and others from getting run over by a forklift;

c.    Failing to take reasonable steps to ensure that the forklift driver was competent to operate the forklift;

d.    Failing to adequately instruct the forklift driver regarding the safe and proper operation of the forklift;

e.    Failing to create and enforce adequate policies to prevent improper loading and operation of the forklift;

f.    Failing to adequately supervise the forklift driver in the operation of the forklift.

145.    At the time of the incident described above, the forklift driver was an employee or agent of Deutsche Post, acting within the course and scope of his employment.

146.    Deutsche Post leased the forklift and was responsible for its maintenance and operation.

147.    The forklift driver drove the forklift loaded with a cargo pallet that impeded his ability to view his direction and path of travel while operating on Foxtrot Ramp, which resulted in him running over and killing Duane Converse.

148.    The forklift driver owed a duty to Decedent and others to operate the forklift in a reasonably safe manner and to take reasonable steps to avoid running over pedestrians.

149.    The forklift driver breached this duty and was negligent in one or more of the following ways:

        a.    Failing to keep a proper lookout;

        b.    Driving too fast for the conditions;

        c.    Driving with an obstructed view;

        d.    Failing to see and avoid contact with Decedent.

150.    The forklift driver was required to adhere to OSHA regulations to include traveling with the load trailing when the load obstructs forward view, and he violated this requirement.  This also violated DHL's own policies and other policies in effect at the base.

151.    The forklift driver was driving faster than the accepted speed limit for operation near aircraft, which contributed to this incident and to Decedent's death.

152.    Deutsche Post is vicariously liable for the negligence of its agents and employees.

153.    As a direct and proximate result of the negligence of Deutsche Post and its agents and employees as set forth above, Decedent died, causing his estate to suffer loss of prospective

net accumulations and medical and funeral expenses, and his surviving minor sons to suffer future loss of support and services, lost parental companionship, instruction and guidance, and mental pain and suffering.

WHEREFORE, the plaintiffs demand judgment against defendant Deutsche Post for the damages claimed herein and any other damages allowed by law.

**COUNT 10**
**NEGLIGENCE OF DHL INTERNATIONAL - IRAQ**

154.    Plaintiffs hereby incorporate by reference all statements and allegations contained in paragraphs 1 through 45 above as if fully set forth herein.

155.    At all relevant times, DHL Iraq had a duty to exercise reasonable care to safely execute its operations on AAAB, Iraq and to take reasonable steps to prevent injury to civilian contractors and others who were working at the air base.

156.    DHL Iraq breached its duty and was negligent in the following respects:

a.    Failing to properly train its agents and employees, including the forklift driver, in the safe operation of the forklift;

b.    Failing to set up, install or provide adequate barriers or other safety devices on the ramp to protect Decedent and others from getting run over by a forklift;

c.    Failing to take reasonable steps to ensure that the forklift driver was competent to operate the forklift;

d.    Failing to adequately instruct the forklift driver regarding the safe and proper operation of the forklift;

e.    Failing to create and enforce adequate policies to prevent improper loading and operation of the forklift;

f.      Failing to adequately supervise the forklift driver in the operation of the forklift.

157.    At the time of the incident described above, the forklift driver was an employee or agent of DHL Iraq, acting within the course and scope of his employment.

158.    DHL Iraq leased the forklift and was responsible for its maintenance and operation.

159.    The forklift driver drove the forklift loaded with a cargo pallet that impeded his ability to view his direction and path of travel while operating on Foxtrot Ramp, which resulted in him running over and killing Duane Converse.

160.    The forklift driver owed a duty to Decedent and others to operate the forklift in a reasonably safe manner and to take reasonable steps to avoid running over pedestrians.

161.    The forklift driver breached this duty and was negligent in one or more of the following ways:

a.      Failing to keep a proper lookout;

b.      Driving too fast for the conditions;

c.      Driving with an obstructed view;

d.      Failing to see and avoid contact with Decedent.

162.     The forklift driver was required to adhere to OSHA regulations to include traveling with the load trailing when the load obstructs forward view, and he violated this requirement.  This also violated DHL's own policies and other policies in effect at the base.

163.    The forklift driver was driving faster than the accepted speed limit for operation near aircraft, which contributed to this incident and to Decedent's death.

164.    DHL Iraq is vicariously liable for the negligence of its agents and employees.

165.     As a direct and proximate result of the negligence of DHL Iraq and its agents and employees as set forth above, Decedent died, causing his estate to suffer loss of prospective net accumulations and medical and funeral expenses, and his surviving minor sons to suffer future loss of support and services, lost parental companionship, instruction and guidance, and mental pain and suffering.

WHEREFORE, the plaintiffs demand judgment against defendant DHL Iraq for the damages claimed herein and any other damages allowed by law.

## COUNT 11
## NEGLIGENCE OF DHL INTERNATIONAL EXPRESS

166.     Plaintiffs hereby incorporate by reference all statements and allegations contained in paragraphs 1 through 45 above as if fully set forth herein.

167.     At all relevant times, DHL Int'l Express had a duty to exercise reasonable care to safely execute its operations on AAAB, Iraq and to take reasonable steps to prevent injury to civilian contractors and others who were working at the air base.

168.     DHL Int'l Express breached its duty and was negligent in the following respects:

a.     Failing to properly train its agents and employees, including the forklift driver, in the safe operation of the forklift;

b.     Failing to set up, install or provide adequate barriers or other safety devices on the ramp to protect Decedent and others from getting run over by a forklift;

c.     Failing to take reasonable steps to ensure that the forklift driver was competent to operate the forklift;

d.     Failing to adequately instruct the forklift driver regarding the safe and proper operation of the forklift;

30

      e.     Failing to create and enforce adequate policies to prevent improper loading and operation of the forklift;

      f.     Failing to adequately supervise the forklift driver in the operation of the forklift.

169.    At the time of the incident described above, the forklift driver was an employee or agent of DHL Int'l Express, acting within the course and scope of his employment.

170.    DHL Int'l Express leased the forklift and was responsible for its maintenance and operation.

171.    The forklift driver drove the forklift loaded with a cargo pallet that impeded his ability to view his direction and path of travel while operating on Foxtrot Ramp, which resulted in him running over and killing Duane Converse.

172.    The forklift driver owed a duty to Decedent and others to operate the forklift in a reasonably safe manner and to take reasonable steps to avoid running over pedestrians.

173.    The forklift driver breached this duty and was negligent in one or more of the following ways:

      a.     Failing to keep a proper lookout;

      b.     Driving too fast for the conditions;

      c.     Driving with an obstructed view;

      d.     Failing to see and avoid contact with Decedent.

174.    The forklift driver was required to adhere to OSHA regulations to include traveling with the load trailing when the load obstructs forward view, and he violated this requirement.  This also violated DHL's own policies and other policies in effect at the base.

175.   The forklift driver was driving faster than the accepted speed limit for operation near aircraft, which contributed to this incident and to Decedent's death.

176.   DHL Int'l Express is vicariously liable for the negligence of its agents and employees.

177.   As a direct and proximate result of the negligence of DHL Int'l Express and its agents and employees as set forth above, Decedent died, causing his estate to suffer loss of prospective net accumulations and medical and funeral expenses, and his surviving minor sons to suffer future loss of support and services, lost parental companionship, instruction and guidance, and mental pain and suffering.

WHEREFORE, the plaintiffs demand judgment against defendant DHL Int'l Express for the damages claimed herein and any other damages allowed by law.

## COUNT 12
## NEGLIGENCE OF DHL GLOBAL MAIL

178.   Plaintiffs hereby incorporate by reference all statements and allegations contained in paragraphs 1 through 45 above as if fully set forth herein.

179.   At all relevant times, DHL Global Mail had a duty to exercise reasonable care to safely execute its operations on AAAB, Iraq and to take reasonable steps to prevent injury to civilian contractors and others who were working at the air base.

180.   DHL Global Mail breached its duty and was negligent in the following respects:

a.   Failing to properly train its agents and employees, including the forklift driver, in the safe operation of the forklift;

b.   Failing to set up, install or provide adequate barriers or other safety devices on the ramp to protect Decedent and others from getting run over by a forklift;

      c.      Failing to take reasonable steps to ensure that the forklift driver was competent to operate the forklift;

      d.      Failing to adequately instruct the forklift driver regarding the safe and proper operation of the forklift;

      e.      Failing to create and enforce adequate policies to prevent improper loading and operation of the forklift;

      f.      Failing to adequately supervise the forklift driver in the operation of the forklift.

181.    At the time of the incident described above, the forklift driver was an employee or agent of DHL Global Mail, acting within the course and scope of his employment.

182.    DHL Global Mail leased the forklift and was responsible for its maintenance and operation.

183.    The forklift driver drove the forklift loaded with a cargo pallet that impeded his ability to view his direction and path of travel while operating on Foxtrot Ramp, which resulted in him running over and killing Duane Converse.

184.    The forklift driver owed a duty to Decedent and others to operate the forklift in a reasonably safe manner and to take reasonable steps to avoid running over pedestrians.

185.    The forklift driver breached this duty and was negligent in one or more of the following ways:

      a.      Failing to keep a proper lookout;

      b.      Driving too fast for the conditions;

      c.      Driving with an obstructed view;

      d.      Failing to see and avoid contact with Decedent.

186.    The forklift driver was required to adhere to OSHA regulations to include traveling with the load trailing when the load obstructs forward view, and he violated this requirement.  This also violated DHL's own policies and other policies in effect at the base.

187.    The forklift driver was driving faster than the accepted speed limit for operation near aircraft, which contributed to this incident and to Decedent's death.

188.    DHL Global Mail is vicariously liable for the negligence of its agents and employees.

189.    As a direct and proximate result of the negligence of DHL Global Mail and its agents and employees as set forth above, Decedent died, causing his estate to suffer loss of prospective net accumulations and medical and funeral expenses, and his surviving minor sons to suffer future loss of support and services, lost parental companionship, instruction and guidance, and mental pain and suffering.

WHEREFORE, the plaintiffs demand judgment against defendant DHL Global Mail for the damages claimed herein and any other damages allowed by law.

## COUNT 13
## NEGLIGENCE OF DHL HOLDINGS (USA) INCORPORATED

190.    Plaintiffs hereby incorporate by reference all statements and allegations contained in paragraphs 1 through 45 above as if fully set forth herein.

191.    At all relevant times, DHL Holdings had a duty to exercise reasonable care to safely execute its operations on AAAB, Iraq and to take reasonable steps to prevent injury to civilian contractors and others who were working at the air base.

192.    DHL Holdings breached its duty and was negligent in the following respects:

a.      Failing to properly train its agents and employees, including the forklift driver, in the safe operation of the forklift;

b.      Failing to set up, install or provide adequate barriers or other safety devices on the ramp to protect Decedent and others from getting run over by a forklift;

c.      Failing to take reasonable steps to ensure that the forklift driver was competent to operate the forklift;

d.      Failing to adequately instruct the forklift driver regarding the safe and proper operation of the forklift;

e.      Failing to create and enforce adequate policies to prevent improper loading and operation of the forklift;

f.      Failing to adequately supervise the forklift driver in the operation of the forklift.

193.    At the time of the incident described above, the forklift driver was an employee or agent of DHL Iraq, acting within the course and scope of his employment.

194.    DHL Holdings leased the forklift and was responsible for its maintenance and operation.

195.    The forklift driver drove the forklift loaded with a cargo pallet that impeded his ability to view his direction and path of travel while operating on Foxtrot Ramp, which resulted in him running over and killing Duane Converse.

196.    The forklift driver owed a duty to Decedent and others to operate the forklift in a reasonably safe manner and to take reasonable steps to avoid running over pedestrians.

197.    The forklift driver breached this duty and was negligent in one or more of the following ways:

a.      Failing to keep a proper lookout;

b.      Driving too fast for the conditions;

c.      Driving with an obstructed view;

d.      Failing to see and avoid contact with Decedent.

198.   The forklift driver was required to adhere to OSHA regulations to include traveling with the load trailing when the load obstructs forward view, and he violated this requirement.  This also violated DHL's own policies and other policies in effect at the base.

199.   The forklift driver was driving faster than the accepted speed limit for operation near aircraft, which contributed to this incident and to Decedent's death.

200.   DHL Holdings is vicariously liable for the negligence of its agents and employees.

201.   As a direct and proximate result of the negligence of DHL Holdings and its agents and employees as set forth above, Decedent died, causing his estate to suffer loss of prospective net accumulations and medical and funeral expenses, and his surviving minor sons to suffer future loss of support and services, lost parental companionship, instruction and guidance, and mental pain and suffering.

WHEREFORE, the plaintiffs demand judgment against defendant DHL Holdings for the damages claimed herein and any other damages allowed by law.

## COUNT 14
## NEGLIGENCE OF DHL EXPRESS (IRAQ), INC.

202.   Plaintiffs hereby incorporate by reference all statements and allegations contained in paragraphs 1 through 45 above as if fully set forth herein.

203.   At all relevant times, DHL Express Iraq had a duty to exercise reasonable care to safely execute its operations on AAAB, Iraq and to take reasonable steps to prevent injury to civilian contractors and others who were working at the air base.

204.   DHL Express Iraq breached its duty and was negligent in the following respects:

a.   Failing to properly train its agents and employees, including the forklift driver, in the safe operation of the forklift;

b.   Failing to set up, install or provide adequate barriers or other safety devices on the ramp to protect Decedent and others from getting run over by a forklift;

c.   Failing to take reasonable steps to ensure that the forklift driver was competent to operate the forklift;

d.   Failing to adequately instruct the forklift driver regarding the safe and proper operation of the forklift;

e.   Failing to create and enforce adequate policies to prevent improper loading and operation of the forklift;

f.   Failing to adequately supervise the forklift driver in the operation of the forklift.

205.   At the time of the incident described above, the forklift driver was an employee or agent of DHL Express Iraq, acting within the course and scope of his employment.

206.   DHL Express Iraq leased the forklift and was responsible for its maintenance and operation.

207.   The forklift driver drove the forklift loaded with a cargo pallet that impeded his ability to view his direction and path of travel while operating on Foxtrot Ramp, which resulted in him running over and killing Duane Converse.

208.     The forklift driver owed a duty to Decedent and others to operate the forklift in a reasonably safe manner and to take reasonable steps to avoid running over pedestrians.

209.     The forklift driver breached this duty and was negligent in one or more of the following ways:

    a.     Failing to keep a proper lookout;

    b.     Driving too fast for the conditions;

    c.     Driving with an obstructed view;

    d.     Failing to see and avoid contact with Decedent.

210.     The forklift driver was required to adhere to OSHA regulations to include traveling with the load trailing when the load obstructs forward view, and he violated this requirement.  This also violated DHL's own policies and other policies in effect at the base.

211.     The forklift driver was driving faster than the accepted speed limit for operation near aircraft, which contributed to this incident and to Decedent's death.

212.     DHL Express Iraq is vicariously liable for the negligence of its agents and employees.

213.     As a direct and proximate result of the negligence of DHL Express Iraq and its agents and employees as set forth above, Decedent died, causing his estate to suffer loss of prospective net accumulations and medical and funeral expenses, and his surviving minor sons to suffer future loss of support and services, lost parental companionship, instruction and guidance, and mental pain and suffering.

WHEREFORE, the plaintiffs demand judgment against defendant DHL Express Iraq for the damages claimed herein and any other damages allowed by law.

## COUNT 15
## NEGLIGENCE OF DHL EXPRESS (BAHRAIN), INC.

214.     Plaintiffs hereby incorporate by reference all statements and allegations contained in paragraphs 1 through 45 above as if fully set forth herein.

215.     At all relevant times, DHL Express Bahrain had a duty to exercise reasonable care to safely execute its operations on AAAB, Iraq and to take reasonable steps to prevent injury to civilian contractors and others who were working at the air base.

216.     DHL Express Bahrain breached its duty and was negligent in the following respects:

        a.      Failing to properly train its agents and employees, including the forklift driver, in the safe operation of the forklift;

        b.      Failing to set up, install or provide adequate barriers or other safety devices on the ramp to protect Decedent and others from getting run over by a forklift;

        c.      Failing to take reasonable steps to ensure that the forklift driver was competent to operate the forklift;

        d.      Failing to adequately instruct the forklift driver regarding the safe and proper operation of the forklift;

        e.      Failing to create and enforce adequate policies to prevent improper loading and operation of the forklift;

        f.      Failing to adequately supervise the forklift driver in the operation of the forklift.

217.     At the time of the incident described above, the forklift driver was an employee or agent of DHL Express Bahrain, acting within the course and scope of his employment.

218.     DHL Express Bahrain leased the forklift and was responsible for its maintenance and operation.

219.     The forklift driver drove the forklift loaded with a cargo pallet that impeded his ability to view his direction and path of travel while operating on Foxtrot Ramp, which resulted in him running over and killing Duane Converse.

220.     The forklift driver owed a duty to Decedent and others to operate the forklift in a reasonably safe manner and to take reasonable steps to avoid running over pedestrians.

221.     The forklift driver breached this duty and was negligent in one or more of the following ways:

        a.      Failing to keep a proper lookout;

        b.      Driving too fast for the conditions;

        c.      Driving with an obstructed view;

        d.      Failing to see and avoid contact with Decedent.

222.      The forklift driver was required to adhere to OSHA regulations to include traveling with the load trailing when the load obstructs forward view, and he violated this requirement.  This also violated DHL's own policies and other policies in effect at the base.

223.     The forklift driver was driving faster than the accepted speed limit for operation near aircraft, which contributed to this incident and to Decedent's death.

224.     DHL Express Bahrain is vicariously liable for the negligence of its agents and employees.

225.     As a direct and proximate result of the negligence of DHL Express Bahrain and its agents and employees as set forth above, Decedent died, causing his estate to suffer loss of prospective net accumulations and medical and funeral expenses, and his surviving minor sons to

suffer future loss of support and services, lost parental companionship, instruction and guidance, and mental pain and suffering.

WHEREFORE, the plaintiffs demand judgment against defendant DHL Express Bahrain for the damages claimed herein and any other damages allowed by law.

## COUNT 16
## NEGLIGENCE OF DHL AVIATION (USA)

226.    Plaintiffs hereby incorporate by reference all statements and allegations contained in paragraphs 1 through 45 above as if fully set forth herein.

227.    At all relevant times, DHL Aviation USA had a duty to exercise reasonable care to safely execute its operations on AAAB, Iraq and to take reasonable steps to prevent injury to civilian contractors and others who were working at the air base.

228.    DHL Aviation USA breached its duty and was negligent in the following respects:

a.    Failing to properly train its agents and employees, including the forklift driver, in the safe operation of the forklift;

b.    Failing to set up, install or provide adequate barriers or other safety devices on the ramp to protect Decedent and others from getting run over by a forklift;

c.    Failing to take reasonable steps to ensure that the forklift driver was competent to operate the forklift;

d.    Failing to adequately instruct the forklift driver regarding the safe and proper operation of the forklift;

e.    Failing to create and enforce adequate policies to prevent improper loading and operation of the forklift;

f.      Failing to adequately supervise the forklift driver in the operation of the forklift.

229.    At the time of the incident described above, the forklift driver was an employee or agent of DHL Aviation USA, acting within the course and scope of his employment.

230.    DHL Aviation USA leased the forklift and was responsible for its maintenance and operation.

231.    The forklift driver drove the forklift loaded with a cargo pallet that impeded his ability to view his direction and path of travel while operating on Foxtrot Ramp, which resulted in him running over and killing Duane Converse.

232.    The forklift driver owed a duty to Decedent and others to operate the forklift in a reasonably safe manner and to take reasonable steps to avoid running over pedestrians.

233.    The forklift driver breached this duty and was negligent in one or more of the following ways:

a.      Failing to keep a proper lookout;

b.      Driving too fast for the conditions;

c.      Driving with an obstructed view;

d.      Failing to see and avoid contact with Decedent.

234.     The forklift driver was required to adhere to OSHA regulations to include traveling with the load trailing when the load obstructs forward view, and he violated this requirement.  This also violated DHL's own policies and other policies in effect at the base.

235.    The forklift driver was driving faster than the accepted speed limit for operation near aircraft, which contributed to this incident and to Decedent's death.

236.    DHL Aviation USA is vicariously liable for the negligence of its agents and employees.

237.    As a direct and proximate result of the negligence of DHL Aviation USA and its agents and employees as set forth above, Decedent died, causing his estate to suffer loss of prospective net accumulations and medical and funeral expenses, and his surviving minor sons to suffer future loss of support and services, lost parental companionship, instruction and guidance, and mental pain and suffering.

WHEREFORE, the plaintiffs demand judgment against defendant DHL Aviation USA for the damages claimed herein and any other damages allowed by law.

## COUNT 17
## NEGLIGENCE OF DHL AVIATION (IRAQ)

238.    Plaintiffs hereby incorporate by reference all statements and allegations contained in paragraphs 1 through 45 above as if fully set forth herein.

239.    At all relevant times, DHL Aviation Iraq had a duty to exercise reasonable care to safely execute its operations on AAAB, Iraq and to take reasonable steps to prevent injury to civilian contractors and others who were working at the air base.

240.    DHL Aviation Iraq breached its duty and was negligent in the following respects:

a.      Failing to properly train its agents and employees, including the forklift driver, in the safe operation of the forklift;

b.      Failing to set up, install or provide adequate barriers or other safety devices on the ramp to protect Decedent and others from getting run over by a forklift;

c.      Failing to take reasonable steps to ensure that the forklift driver was competent to operate the forklift;

d.      Failing to adequately instruct the forklift driver regarding the safe and proper operation of the forklift;

e.      Failing to create and enforce adequate policies to prevent improper loading and operation of the forklift;

f.      Failing to adequately supervise the forklift driver in the operation of the forklift.

241.    At the time of the incident described above, the forklift driver was an employee or agent of DHL Aviation Iraq, acting within the course and scope of his employment.

242.    DHL Aviation Iraq leased the forklift and was responsible for its maintenance and operation.

243.    The forklift driver drove the forklift loaded with a cargo pallet that impeded his ability to view his direction and path of travel while operating on Foxtrot Ramp, which resulted in him running over and killing Duane Converse.

244.    The forklift driver owed a duty to Decedent and others to operate the forklift in a reasonably safe manner and to take reasonable steps to avoid running over pedestrians.

245.    The forklift driver breached this duty and was negligent in one or more of the following ways:

a.      Failing to keep a proper lookout;

b.      Driving too fast for the conditions;

c.      Driving with an obstructed view;

d.      Failing to see and avoid contact with Decedent.

246.     The forklift driver was required to adhere to OSHA regulations to include traveling with the load trailing when the load obstructs forward view, and he violated this requirement.  This also violated DHL's own policies and other policies in effect at the base.

247.     The forklift driver was driving faster than the accepted speed limit for operation near aircraft, which contributed to this incident and to Decedent's death.

248.     DHL Aviation Iraq is vicariously liable for the negligence of its agents and employees.

249.     As a direct and proximate result of the negligence of DHL Aviation Iraq and its agents and employees as set forth above, Decedent died, causing his estate to suffer loss of prospective net accumulations and medical and funeral expenses, and his surviving minor sons to suffer future loss of support and services, lost parental companionship, instruction and guidance, and mental pain and suffering.

WHEREFORE, the plaintiffs demand judgment against defendant DHL Aviation Iraq for the damages claimed herein and any other damages allowed by law.

## COUNT 18
## NEGLIGENCE OF DHL AVIATION

250.     Plaintiffs hereby incorporate by reference all statements and allegations contained in paragraphs 1 through 45 above as if fully set forth herein.

251.     At all relevant times, DHL Aviation had a duty to exercise reasonable care to safely execute its operations on AAAB, Iraq and to take reasonable steps to prevent injury to civilian contractors and others who were working at the air base.

252.     DHL Aviation breached its duty and was negligent in the following respects:

a. Failing to properly train its agents and employees, including the forklift driver, in the safe operation of the forklift;

b. Failing to set up, install or provide adequate barriers or other safety devices on the ramp to protect Decedent and others from getting run over by a forklift;

c. Failing to take reasonable steps to ensure that the forklift driver was competent to operate the forklift;

d. Failing to adequately instruct the forklift driver regarding the safe and proper operation of the forklift;

e. Failing to create and enforce adequate policies to prevent improper loading and operation of the forklift;

f. Failing to adequately supervise the forklift driver in the operation of the forklift.

253. At the time of the incident described above, the forklift driver was an employee or agent of DHL Aviation, acting within the course and scope of his employment.

254. DHL Aviation leased the forklift and was responsible for its maintenance and operation.

255. The forklift driver drove the forklift loaded with a cargo pallet that impeded his ability to view his direction and path of travel while operating on Foxtrot Ramp, which resulted in him running over and killing Duane Converse.

256. The forklift driver owed a duty to Decedent and others to operate the forklift in a reasonably safe manner and to take reasonable steps to avoid running over pedestrians.

257. The forklift driver breached this duty and was negligent in one or more of the following ways:

   a.      Failing to keep a proper lookout;

   b.      Driving too fast for the conditions;

   c.      Driving with an obstructed view;

   d.      Failing to see and avoid contact with Decedent.

258.    The forklift driver was required to adhere to OSHA regulations to include traveling with the load trailing when the load obstructs forward view, and he violated this requirement.  This also violated DHL's own policies and other policies in effect at the base.

259.    The forklift driver was driving faster than the accepted speed limit for operation near aircraft, which contributed to this incident and to Decedent's death.

260.    DHL Aviation is vicariously liable for the negligence of its agents and employees.

261.    As a direct and proximate result of the negligence of DHL Aviation and its agents and employees as set forth above, Decedent died, causing his estate to suffer loss of prospective net accumulations and medical and funeral expenses, and his surviving minor sons to suffer future loss of support and services, lost parental companionship, instruction and guidance, and mental pain and suffering.

WHEREFORE, the plaintiffs demand judgment against defendant DHL Aviation for the damages claimed herein and any other damages allowed by law.

## COUNT 19
## NEGLIGENCE OF MR. ZHOU (FIRST NAME UNKNOWN)

262.    Plaintiffs hereby incorporate by reference all statements and allegations contained in paragraphs 1 through 45 above as if fully set forth herein.

47

263.    At all relevant times, Zhou had a duty to exercise reasonable care to safely execute his responsibilities on AAAB, Iraq and to take reasonable steps to prevent injury to civilian contractors and others who were working at the air base.

264.    Zhou breached his duty and was negligent in the following respects:

        a.    Failing to operate the forklift in a reasonably safe manner;

        b.    Failing to keep a safe and adequate lookout while driving the forklift;

        c.    Carrying the load on the forklift in a manner that obstructed his view;

        d.    Failing to obey and follow the policies and procedures in effect at the base that applied to the loading and operation of the forklift;

        f.    Operating the forklift in a careless manner;

        g.    Driving too fast for the conditions;

265.    Zhou drove the forklift loaded with a cargo pallet that impeded his ability to view his direction and path of travel while operating on Foxtrot Ramp, which resulted in him running over and killing Duane Converse.

266.    Zhou was required to adhere to OSHA regulations to include traveling with the load trailing when the load obstructs forward view, and he violated this requirement.  This also violated DHL's own policies and other policies in effect at the base.

267.    Zhou was driving faster than the accepted speed limit for operation near aircraft, which contributed to this incident and to Decedent's death.

268.    As a direct and proximate result of the negligence of Zhou as set forth above, Decedent died, causing his estate to suffer loss of prospective net accumulations and medical and

funeral expenses, and his surviving minor sons to suffer future loss of support and services, lost parental companionship, instruction and guidance, and mental pain and suffering.

WHEREFORE, the plaintiffs demand judgment against defendant Zhou for the damages claimed herein and any other damages allowed by law.

## COUNT 20
## NEGLIGENCE OF MR. CARVALHO (FIRST NAME UNKNOWN)

269.    Plaintiffs hereby incorporate by reference all statements and allegations contained in paragraphs 1 through 45 above as if fully set forth herein.

270.    At all relevant times, Carvalho had a duty to exercise reasonable care to safely execute his responsibilities on AAAB, Iraq and to take reasonable steps to prevent injury to civilian contractors and others who were working at the air base.

271.    Carvalho breached his duty and was negligent in the following respects:

    a.      Failing to operate the forklift in a reasonably safe manner;

    b.      Failing to keep a safe and adequate lookout while driving the forklift;

    c.      Carrying the load on the forklift in a manner that obstructed his view;

    d.      Failing to obey and follow the policies and procedures in effect at the base that applied to the loading and operation of the forklift;

    f.      Operating the forklift in a careless manner;

    g.      Driving too fast for the conditions;

272.    Carvalho drove the forklift loaded with a cargo pallet that impeded his ability to view his direction and path of travel while operating on Foxtrot Ramp, which resulted in him running over and killing Duane Converse.

273.    Carvalho was required to adhere to OSHA regulations to include traveling with the load trailing when the load obstructs forward view, and he violated this requirement.  This also violated DHL's own policies and other policies in effect at the base.

274.    Carvalho was driving faster than the accepted speed limit for operation near aircraft, which contributed to this incident and to Decedent's death.

275.    As a direct and proximate result of the negligence of Carvalho as set forth above, Decedent died, causing his estate to suffer loss of prospective net accumulations and medical and funeral expenses, and his surviving minor sons to suffer future loss of support and services, lost parental companionship, instruction and guidance, and mental pain and suffering.

WHEREFORE, the plaintiffs demand judgment against defendant Carvalho for the damages claimed herein and any other damages allowed by law.


### JURY DEMAND

Plaintiff hereby demands trial by jury.


Respectfully submitted this 10th day of <u>March</u>, 2011.


BY:    <u>/s/ Eric Romano</u>
       Eric Romano
       Romano Law Group
       1005 Lake Avenue
       Lake Worth, FL 33460
       (561) 533-6700
       (561) 533-1285 - fax
       eric@RomanoLawGroup.com
       Florida Bar No. 120091